# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

LIGHTHOUSE PRIVATE CHRISTIAN
ACADEMY, INC., a Florida not-for-profit
corporation,

      Plaintiff,

v.

Case No.: 3:26-cv-01377

JONATHAN KANZIGG, individually,
and MIDWAY FIRE DISTRICT,

      Defendants.

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, Lighthouse Private Christian Academy, Inc. ("**Lighthouse**"), sues

Defendants, Jonathan Kanzigg ("**Kanzigg**") and Midway Fire District ("**Midway**"),

and alleges as follows:

### PARTIES, JURISDICTION & VENUE

1.　　This is an action bought under Federal statutory and Florida common

law in which Lighthouse seeks to vindicate and protect its fundamental rights and

recover damages for substantial harms and injuries it suffered because of an extended

campaign of harassment and retaliation under color of law that was designed and

intended to destroy Lighthouse, its schools, and its reputation.

2.　　Lighthouse seeks to recover equitable relief and damages in excess of

$75,000.00, exclusive of interest, attorneys' fees, and costs.

3.      Plaintiff, Lighthouse, is a Florida not-for-profit corporation with its principal place of business located in Gulf Breeze, Florida.

4.      Defendant, Kanzigg, is a resident of Santa Rosa County, Florida.

5.      Defendant, Midway, is an independent special fire control district created by the Florida Legislature with its principal place of business located in Gulf Breeze, Florida.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 42 U.S.C. §1983 because it involves claims arising under the U.S. Constitution and laws of the United States.  This Court has supplemental jurisdiction over Lighthouse's state law claims pursuant to 28 U.S.C. §1367 because those claims are so related to the claims in this action within the Court's original jurisdiction that they form part of the same cause or controversy under Article III of the U.S. Constitution, and do not raise novel or complex issues of state law or substantially predominate over the claims over which this Court has original jurisdiction.

7.      Pursuant to 28 U.S.C. §1391, venue is proper in this District because a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District and Defendants reside in this District.

8.      Based on the facts alleged throughout this Complaint, this Court has personal jurisdiction over each Defendant under section 48.193, *Florida Statutes*, because they personally, directly, in concert with one another, and/or through an employee, agent, co-conspirator, and/or other person or entity acting under their management, supervision, direction, and/or control: committed tortious acts within

the state of Florida that were expressly aimed at Florida, the substantial effects of which were suffered in Florida; engaged in substantial and not isolated activity within the state of Florida; and/or conspired to commit tortious acts against Plaintiff within the state of Florida and committed overt acts in furtherance thereof within the state of Florida.

9.     Based on the facts alleged throughout this Complaint, sufficient minimum contacts exist between each Defendant and the state of Florida to satisfy Due Process under the United States Constitution because Defendants: engaged in substantial and not isolated activity within and directed at the state of Florida; reside, maintain an office, and/or conducted business through employees, agents, co-conspirators, and/or authorized representatives located in the state of Florida; and/or conspired to commit intentional torts expressly aimed at Florida, the effects and harms of which were calculated to and did cause injury within the state of Florida. Accordingly, each of the Defendants could and should have reasonably anticipated being sued for the claims alleged herein in the state of Florida.

10.     Defendants' actions, failures to act, and misconduct alleged herein produced and/or substantially contributed to producing damages, injuries, and harms that Lighthouse suffered in the state of Florida.

11.     All conditions precedent to the filing and maintenance of this action have occurred, have been performed, and/or have been waived.

## FACTUAL BACKGROUND

### Overview of the Parties

12.     Lighthouse is a non-denominational private Christian school accredited by the Christian Schools of Florida and Middle States Association of Colleges and Schools that provides an exceptional education and spiritual development to children in Pensacola, Gulf Breeze, Milton, Pace, and Navarre, Florida.

13.     Lighthouse first opened in 2004, not long after Hurricane Ivan devastated Florida's panhandle and caused several local schools to close.  Through hard work, dedication, and significant financial investment, Lighthouse grew from a small class of pre-k students in the back of a church to several campuses in Santa Rosa and Escambia counties.

14.     Lighthouse provides a high-quality Christan-centered education to K-12 students at several campuses in Northwest Florida, including dual-enrollment college courses for high-school students through accreditation agreements with several colleges and universities and educational opportunities for special needs students, victims of bullying, and children of active military, first responders, and poor and vulnerable families.

15.     Lighthouse's main campus is located at 1530 New Hope Road in Gulf Breeze, Florida.  It also operates campuses at 1100 W. Scott Street and 625 N. 9th Avenue in Pensacola, Florida,  and 6163 Dogwood Drive in Milton, Florida.

16.     Lighthouse strives to expose students to a variety of cultures and enrolls students of any race, color, and national and ethnic origin.

4

17.    Lighthouse is also a Student and Exchange Visitor Program (SEVP) certified school and SEVIS (Student and Exchange Visitor Information System) approved school able to grant student visas to foreign students.

18.    As a private school, Lighthouse operates through tuition and fees paid by or on behalf of students pursuant to enrollment agreements with their families.

19.    In addition to the educational opportunities it provides, Lighthouse has invested hundreds of thousands of dollars in the communities it serves, such as: $120,000 for the renovation of Gadsden Street United Methodist Church, $130,000 into the Milton First Assembly of God Church, $100,000 for remodeling of the Malcolm Yonge Gym, $100,000 for improvements to East Milton Park (for the gymnasium floor, sprinkler systems, and baseball dugouts), and $100,000 for improving and enhancing Gulf Breeze Zoo.

20.    Midway is an independent special fire control district created by Florida's Legislature to provide fire suppression and related activities within the Midway district of Santa Rosa County.  See § 119.003(5), *Fla. Stat.*

21.    Pursuant to § 191.008, *Fla. Stat.*, Midway has the power to "provide for fire suppression and prevention by establishing and maintaining fire stations and fire substations and acquiring and maintaining such firefighting and fire protection equipment deemed necessary to prevent or fight fires," as well as certain special powers to employ, train, and equip personnel, and to enforce firesafety standards and codes and enforce the rules of the State Fire Marshal consistent with the exercise of the duties

5

authorized by chapter 553 or chapter 633, with respect to fire suppression, prevention, and firesafety code enforcement.

22.    Midway's Charter (Ch. 2003-364, as amended by Ch. 2024-298) further defines the scope of its authority and duties under Florida law.

23.    Kanzigg served as Midway's Fire Chief at all times relevant to this action until he "retired" effective August 1, 2024, and in that capacity had the authority to and did make policy decisions on behalf of Midway.

## Defendants' Campaign Against Lighthouse

24.    In early 2024, Lighthouse contacted Midway to request an annual fire inspection for its school located at 1530 New Hope Road, Gulf Breeze, FL 32563.

25.    On February 26, 2024, numerous Midway personnel arrived at Lighthouse's campus to conduct the school's annual fire inspection and, acting at Kanzigg's direction and with his encouragement and acquiescence, immediately entered and searched two residential houses, zoned R2, located at 1508 and 1546 New Hope Road, Gulf Breeze, FL 32563 (the "**New Hope Road Homes**"):



26.     Midway focused on and immediately searched the New Hope Road Homes because Kanzigg *supposedly* received an "anonymous" call reporting that students were living on Lighthouse's campus—even though Midway had a policy of "not acknowledging anonymous complaints."[1]

27.     Upon information and belief, Kanzigg already knew that this *supposedly* "anonymous" call originated from Taylor Bishop, the wife of Kanzigg's friend and

---

[1] See "*School scrutinized, owner responds*," Navarre Press, Mar. 20, 2024 [https://navarrepress.com/school-scrutinized-owner-responds/]

fellow-firefighter firefighter Chris Bishop, because Lighthouse had recently approached Taylor Bishop about her personal relationship with one of Lighthouse's coaches, during which Taylor Bishop forewarned to Lighthouse, "you will regret this."

28. At that time, Kanzigg also held long-standing animosity toward Lighthouse and its President, Joanna Johannes.

29. When Midway searched the New Hope Road Homes, 24 foreign exchange students from Brazil (ages 15 to 19) were enrolled, attending school, and playing soccer at Lighthouse under the SEVP, and living in the New Hope Road Homes under the supervision of resident advisors in accommodations reviewed and approved by their parents.

30. Each of these Brazilian exchange students was paying Lighthouse approximately $14,000 per year for their education and housing (none of which was covered by any government funding, "taxes," or scholarship money).

31. These Brazilian exchange students were attending Lighthouse because (among other reasons) it offered dual enrollment, a highly credentialed staff, a soccer field on campus, and housing that allowed the students to commune together in accommodations where they could gather and interact safely as a group.

32. Without lawful authority to do so and acting at Kanzigg's direction and with his encouragement and acquiescence, Midway personnel entered and searched the New Hope Road Homes and photographed numerous private areas of the interiors of the dwellings and their contents which were completely unrelated to any firesafety issues, as well as the personal property of Lighthouse's Brazilian exchange students.

33.   Following Midway's unlawful search of the Hew Hope Road Homes and their contents was conducted under the guise of a fire "inspection."

34.   After unlawfully searching the New Hope Road Homes, Midway promptly declared them "unsafe" and posted "NO OCCUPANCY" notices on them, while simultaneously discussing Lighthouse's other campuses and contacting the Pensacola Fire department to encourage it to also take action against Lighthouse:



35.   Kanzigg's and Midway's actions forced Lighthouse to pay for alternative accommodations for the Brazilian exchange students in a local hotel at substantial cost; where the students were separated into multiple rooms off-campus,

contrary to their parents' wishes, and hotel staff was heard commenting about the students as "foreigners" and "roaches" who were "not wanted" at the hotel.

36.    On February 27, 2024, Midway Fire Marshal Michael Osban ("**Osban**")—who also had authority to and did make policy decisions on behalf of Midway—and Kanzigg texted about doing a "deep dive" into the fire code to find a way to require Lighthouse to install expensive fire sprinkler systems at the New Hope Road Homes:



37.    On February 28, 2024, Midway prepared Inspection Reports for the New Hope Road Homes and declared 1546 New Hope Road to be a "Lodging or Rooming House" and 1508 New Hope Road to be a "Dormitory" under the Florida Fire Prevention Code; which would require Lighthouse to install incredibly expensive automatic fire sprinkler systems in both residential houses.

38.    On March 1, 2024, Kanzigg sent an email to Midway Board Commissioners Neal Carter, Bob Murphy, John Poole, Richard Delp, and Justin Labrato, in which he falsely asserted Lighthouse was housing "34 teenage students" in houses that were in "terrible condition" and "pulled the same thing in Pensacola

and was shut down by the PFD Fire Marshal," while openly admitting his "long history with the owners…so there will be no exceptions":

> **From:** Jonathan Kanzigg <jonathan.kanzigg@midwayfire.com>
> **Sent:** Friday, March 01, 2024 10:55 AM EST
> **To:** Neal Carter <neal.carter@midwayfire.com>; Bob Murphy <bob.murphy@midwayfire.com>; John poole <john.poole@midwayfire.com>; Richard Delp <richard.delp@midwayfire.com>; Justin Labrato <justin.labrato@midwayfire.com>
> **Subject:** Weekly Report
> **Attachment(s):** "InspectionResults.pdf","Midway Fire & EMS Assessment Program Proposal.pdf","IMG_7264.jpeg","IMG_7263.jpeg","IMG_7267.jpeg","IMG_7301.jpeg","IMG_7310.jpeg","SRCPA - DISTRICT Intergovernmetal Agreement - non-advalorem assessments.pdf","Scan Feb 28, 2024 (1).pdf"
>
> Busy week,
>
> I have attached a copy of an inspection report from Lighthouse School. Mike was forced to shut two of their buildings down. This will likely hit the news, so I wanted you to know. They have two old houses on the property, housing 24 teenage students in one and 10 in the other. The hoses were in terrible condition with no sprinkler, alarm, and ADA compliance. These teen boys are from Portugal and are here to play soccer, but they do the school work online. Lighthouse School pulled the same thing in Pensacola and was shut down by PFD Fire Marshal. I have a long history with the owners (16 years), so there will be no exceptions. The boys are currently being housed at the Hampton Inn in Navarre. I have included some pictures of the living conditions.

39.     At that time, Lighthouse's student living arrangements in Pensacola had already been approved by the Pensacola Fire Department. However, as a result of calls Kanzigg made to Pensacola Fire Marshal Jose Cobb—the Pensacola Fire Department reversed course and soon forced Lighthouse to also install an expensive approved fire sprinkler system at the Pensacola location as well.

40.    Over the course of March 1-6, 2024, Kanzigg and Midway internally and publicly began circulating the photos taken of the private interiors of New Hope Road Homes and their contents during Midway's unlawful search on February 26, 2024.

41.    Meanwhile, Lighthouse relocated the Brazilian students to private homes owned by Johannes located at 4805 Soundside Dr. and 2084 Refugee Circle in Gulf Breeze.

42.    On March 4, 2024, Midway firefighters Michael McKenzie and Levi Adler texted with Osban, joking about the relocation of the Brazilian students and trying to get press coverage concerning Lighthouse:

*Michael (Red) McKenzie*
Is the refuge circle the lighthouse alt location?

Yes, just found out about it today from a concerned resident.

*Levi Alderfer*
Interesting name......

*Michael (Red) McKenzie*
Replying to Levi Alderfer , 2024-03-04 14:48:50: « Interesting name...... »
That's what I thought

*Michael (Red) McKenzie*
At least they aren't living in a moldy environment.

*Levi Alderfer*
Fresh paint covers a lot!

The resident said she counted 23 kids and they have beds in the garage.

*Levi Alderfer*
She should make a call to Navarre and Midway news!

She said she was going to call Channel 3. I told her please do and have them call us and we'd be happy to fill them in.

*Levi Alderfer*
Would love to hear how a high school dean hid this from county inspectors and maybe they can even take a walk in the press box....

Emphasized "Would love to hear how a high school dean hid this..."

43.    Kanzigg, Osban, and other Midway personnel also began systematically making false complaints about Lighthouse to code enforcement, Pensacola Fire Marshall Jose Cobb, the Department of Children and Families, Escambia County Fire Captain Nathan Edlar, Santa Rosa Sheriff Bob Johnson, Santa Rosa Police Chief Randy Tifft, all of Santa Rosa County's Commissioners, and other agencies and public officials—all with the goal of initiating investigations of and government action against Lighthouse.

44.    On March 4, 2024, Kanzigg emailed Janice Gilley, a former Escambia County Administrator and legislative aide to Florida Senator Doug Broxson, falsely stating that Lighthouse was "illegally housing 31 foreigners from Portugal," including "21 living in one small house" with "mold and other code violations," and falsely accusing Lighthouse of having the students in "*Trafficking like conditions*" and leaving the kids "completely on their own," while also stating that Lighthouse is "accredited by the Florida Christian Schools Association" and asking "how much funding do these schools get for each student":

**From:** Jonathan Kanzigg <jonathan.kanzigg@midwayfire.com>
**Sent:** Monday, March 04, 2024 2:45 PM EST
**To:** Gilley, Janice <gilley.janice@flsenate.gov>
**Subject:** I have some questions

If you have some time can you please call me to discuss an MFD issue with a private school? Lighthouse Christian School is illegally housing 31 foreigners from Portugal. These are high school-age students. There were 21 living in one small house and 10 living in another on school property. Each one room had 4 sets of bunk beds with nine kids sleeping in the garage, We immediately issued a no-occupancy notice. The houses did not have sprinkler or alarm systems not to mention the mold and other code violations. The owners of Lighthouse have just moved the kids to a brand-new house that does not meet the criteria of a dorm. Now, the HOA is reaching out to us and is contacting Channel 3. Santa Rosa County building officials are also working with us to shut this house down. This school is accredited by the Florida Christian Schools Association.

My concerns are,
1. Trafficking like conditions. These kids are completely on their own and something is not right. We were told they come in for four months to play soccer and do school online.
2. I believe they get money from the state for each of these kids to attend?

My questions are, how much funding do these schools get for each student?
Is this something that Senator Broxson or other legislatures would want to address?

Please feel free to

--
Jonathan Kanzigg
Fire Chief
Midway Fire District
1322 College Pkwy.
Gulf Breeze. Fl 32563
850.932.4771
jonathan.kanzigg@midwayfire.com

45. On March 4, 2024, Kanzigg also texted Santa Rosa County Commissioner Colten Wright making additional false statements about Lighthouse, in response to which Commissioner Wright pointed out to Kanzigg that the New Hope Road Houses were residential and zoned R2 and pointing out the disparate treatment being directed at Lighthouse by asking whether Midway inspected "every Airbnb and VRBO in the district?":

3/4/2024 4:36:45 PM



Just an FYI, this is just one picture from one of the houses at lighthouse school. So Miss Joanne moved the kids this weekend to another house in a new neighborhood and the neighbors are raising hell they even start a Facebook page about it. It's a brand new neighborhood 3000 square-foot house with 21 kids living in it.







I get it.. treating it like a dorm room.  She claims the students were moved to a hotel.  This is a slippery slope though... houses are residential properties in an area currently zoned R2.  Does the FD inspect every AirBnB or VRBO in the district?  I'm confident many of those could be considered unsafe in terms of occupancy and life safety measures as well... and the vast majority are zoned R1.  This is a bad look on everyone... Midway FD, County, and Lighthouse.

I've been working with Brad and Tambre on this trying to better understand how we prevent this kind of situation.

Yes, but now she's moved them to another house, which means we could go down there and shut that house down as well. We have that jurisdiction.

The worst part is she's getting tax dollars for every student and they're from another country. How the hell is that possible?

The neighborhood they're living in now they've started a Facebook page about it and I've contacted Channel 3

I'm checking into the hotel at the FPL symposium, I'll call you in a few minutes

They were at the Hampton, but I know she's moved 23 of them to a house that she owns

It does not matter where they stay. It's considered a dorm.

46.    On March 4, 2024, Osban, working in coordination with Kanzigg, sent Lighthouse the following email, on which he copied Lighthouse's accreditation leaders at MSA-CESS and Christan Schools of Florida:

----- Forwarded Message -----
**From:** "Michael Osban" <michael.osban@midwayfire.com>
**To:** "lhprivateacademy@aol.com" <lhprivateacademy@aol.com>
**Cc:** "Jonathan Kanzigg" <jonathan.kanzigg@midwayfire.com>, "bruce.gillingham@myfloridacfo.com" <bruce.gillingham@myfloridacfo.com>, "danajames@csfla.org" <danajames@csfla.org>, "susanataylor@csfla.org" <susanataylor@csfla.org>, "info@msa-cess.org" <info@msa-cess.org>, "Tambre Lee" <TambreL@santarosa.fl.gov>
**Sent:** Mon, Mar 4, 2024 at 1:54 PM
**Subject:** In regards to Lighthouse Christian Academy houses: 1508 & 1546 New Hope Road
Dr. Johannes,

Thank you for reaching out regarding the two houses located at 1508 and 1546 New Hope Road that were inspected on 2/26/2024. I will address the four main concerns you brought to my attention in your text message to me on 3/2/2024. I have attached a copy of your text message to this email for reference. Those concerns were R2 Zoning, the need for a sprinkler system, the seasonal stay of the occupants and utilizing a nightly fire watch.

As you stated in your text message the two houses are indeed in an R2 Zone which is zoned for one- and two-family residential dwellings. Per the current Florida Fire Prevention Code 8th Edition (FFPC), a one-and two-family dwelling is defined in Chapter 24 as the following:

· *FFPC 101, 24.1.1.2 - One- and two-family dwellings shall be limited to buildings containing not more than two dwelling units in which each dwelling unit is occupied by members of a single family with no more than three outsiders, if any accommodated in rented rooms.*

The two houses are not being used in the manner as defined by the code and require an occupancy change which changes the code's requirements. At the time of inspection, the house located at 1546 New Hope Road had approximately 10 occupants housed which puts the occupancy under the requirements of Chapter 26 of the FFPC for Lodging or Rooming Houses which is defined as the following:

· *FFPC 101, 26.1.1.1 - The requirements of this chapter shall apply to buildings that provide sleeping accommodation for 16 or fewer persons on either a transient or permanent basis, with or without meals, but without separate cooking facilities for individual occupants.*

REVIEW000139

The requirement for an approved automatic sprinkler under Chapter 26 of the FFPC reads as follows:

· *FFPC 101, 26.3.6.1 – All new lodging or rooming houses shall be protected throughout by an approved automatic sprinkler system.*

At the time of inspection, the house located at 1508 New Hope Road had approximately 21 occupants housed which puts the occupancy under the requirements of Chapter 28 of the FFPC for New Hotels and Dormitories which is defined as the following:

· *FFPC 101, 28.1.1.1 - The requirements of this chapter shall apply to new building or portions thereof used as a hotel or dormitory occupancies (see 1.3.1)*
· *FFPC 1, 1.3.1 – New and Existing Buildings and Structures. The code shall apply to both new construction and existing buildings and existing structures.*
· *FFPC 101, 3.3.66 – Dormitory – A building or a space in a building in which group sleeping accommodations are provided for more than 16 persons who are not members of the same family in one room, or a series of closely associated rooms, under the joint occupancy and single management, with or without meals, but without individual cooking facilities.*

The requirement for an approved automatic sprinkler under Chapter 28 of the FFPC reads as follows:

· *FFPC 101, 28.3.5.1 – All buildings shall be protected throughout by an approved, supervised automatic sprinkler system.*

Regarding utilizing a fire watch for the two houses, a fire watch is intended as a temporary solution to a temporary problem not a permanent solution to not having meet the required FFPC requirements (as referenced above) The code does not provide the option of a fire watch to cover for not having the needed safety measures in place. NFPA 25, Maintenance of Water-Based Fire Protection Systems which is recognized by the FFPC states the following regarding the need for a fire watch:

· *NFPA 25, 15.5.2 (4) – Where a fire protection system is out of service for more than 10 hours in a 24-hour period, the impairment coordinator shall arrange for one of the following:*
  o *Evacuation of the building or portion of the building affected by the system out of service.*
  o *An approved fire watch.*
  o *Establishment of a temporary watch supply.*
  o *Establishment and implementation of an approved program to eliminate potential ignition sources and limit the amount of fuel available to the fire.*

17

47.    On March 4, 2024, Lighthouse responded to Osban's email by (among other things) asking whether Midway was applying the same rules to Lighthouse that it was to VRBO's and Airbnb's and stating that Lighthouse's 24 Brazilian students could be dived among the two New Hope Road Homes (12 per house) or that Lighthouse could even limit each house to 8 students and find host families for the rest of them:

> **From:** Joanna Johannes <joannaljohannes@gmail.com>
> **Sent:** Monday, March 04, 2024 3:57 PM EST
> **To:** lhprivateacademy@aol.com <lhprivateacademy@aol.com>; jonathan.kanzigg@midwayfire.com <jonathan.kanzigg@midwayfire.com>; bruce.gillingham@myfloridacfo.com <bruce.gillingham@myfloridacfo.com>; danajames@csfla.org <danajames@csfla.org>; Sue Taylor (susanataylor@csfla.org) <susanataylor@csfla.org>; tambrel@santarosa.fl.gov <tambrel@santarosa.fl.gov>; michael.osban@midwayfire.com <michael.osban@midwayfire.com>; district5@santarosa.fl.gov <district5@santarosa.fl.gov>
> **Subject:** Re: Fw: In regards to Lighthouse Christian Academy houses: 1508 & 1546 New Hope Road
>
> I will review this information.
>
> Single family with no more than 3 'outsiders"? What do we do about people living in a home together that are not "family" members? Are these the rules for VRBOs and AIRBNBs? We do have a few players that are related and are thus considered family members.
>
> We only have 24 Brazilian soccer players here in America. Thus, I do not understand how the 10 and 21 numbers were counted. The 24 players could be divided between the 2 four bedroom homes or we can put 8 in each home and find host families for the rest.
> I need to know how many of these visiting athletes are able to be housed in the 1508 and 1546 homes?
>
> If you are stating the homes cannot be used AT ALL for the soccer season unless fire sprinklers are installed, then I am respectfully requesting that we expedite the process for permitting and installation as to not to continue to have our overseas visitors displaced. I just do not understand why the Brazilians are able to rent any other dwelling in the county as an AIRBNB, but they cannot be in the New Hope homes. Please help me to understand the difference.
>
> I do not know why you cc'd my esteemed accreditation leaders on your response. I just sent you a personal text asking for clarification and explanation.
>
> Regards,
>
> Dr. Joanna Johannes

48.    Osban, working in coordination with Kanzigg, responded on March 6, 2024, by stating that the New Hope Road Homes "require an occupancy change" and that "NO OCCUPANCY' would be permitted until approved fire sprinkler systems were installed:

18

From: Michael Osban <michael.osban@midwayfire.com>
Sent: Wednesday, March 06, 2024 9:54 AM EST
To: Joanna Johannes <joannaljohannes@gmail.com>
CC: lhprivateacademy@aol.com <lhprivateacademy@aol.com>; jonathan.kanzigg@midwayfire.com
<jonathan.kanzigg@midwayfire.com>; bruce.gillingham@myfloridacfo.com <bruce.gillingham@myfloridacfo.com>;
danajames@csfla.org <danajames@csfla.org>; Sue Taylor (susanataylor@csfla.org) <susanataylor@csfla.org>;
tambrel@santarosa.fl.gov <tambrel@santarosa.fl.gov>; district5@santarosa.fl.gov <district5@santarosa.fl.gov>
Subject: Re: Fw: In regards to Lighthouse Christian Academy houses: 1508 & 1546 New Hope Road

Dr. Johannes,

The number of kidsaccounted for during my inspection was based on beds available and discussion withColin
Hendrickson. Regardless of the exact number of people you are housing at1508 and 1546 New Hope Road the occupancy
is still going to change. These areno longer residential housing because, per FFPC Chapter 24 that I referenced inmy last
email Lighthouse Christian Academy is providing lodging and/ordormitories for students and coaches as a part of the
educational institutionand the houses are no longer being used as a one- and two-family dwelling.Whether or not the people
being housed is below 16 or above16 an approvedsprinkler system is required per FFPC Chapters 26 and 28 which I
referenced inmy last email.

As far as thepermitting and installation of an approved sprinkler system that is totally upto Lighthouse Christian Academy
having a certified sprinkler installationcompany submit the proper build out plans to the Midway Fire District. At thatpoint I
would be happy to help expedite the review process to facilitate speedyinstallation, inspection, and system texting. Until, the
sprinkler system has been addressed NO OCCUPANCY is allowed in the 1508 or 1546 New Hope Road addresses.

In addition to thecode violations at 1508 and 1546 New Hope Road it has been brought to myattention that you are now
housing up to 23 of the displaced students in aresidential house at 2084 Refuge Circle. This house is also, per FFPC
Chapter24 meant to be used as a one- and two-family dwelling not as a lodging androoming or dormitory as laid out in FFPC
Chapter 26 & 28. I have received complaintsfrom members of the neighborhood.

49.    That same day, Kanzigg texted with Commissioner Labrato about efforts

to generate negative news coverage of Lighthouse and reaching out to Fox News and

Rick Outzen (publisher/owner of *Pensacola InWeekly*):

19



50.    On March 6, 2024, Midway personnel were also joking internally about the fact that Midway, under Kanzigg's direction and in coordination with Osban, was also using its authority to prohibit Lighthouse from using its press box:



51.    On March 6, 2024, Kanzigg spoke to Bill Emerson (Dean of Penalosa State College—one of Lighthouse's dual enrollment partners) about Lighthouse and then texted with Osban about the amount of tuition Lighthouse was charging and coordinating with the press and sending the photos Midway took of the private interiors and contents of the New Hope Road Homes during its unlawful inspection to the news media:

Bill Emerson said this is how much they make on those students

*Attachment not found:*
*IMG_6031.jpeg (Image)*

They charge $14,000 just for room and board

That's unconscionable!!!

He said the students pay the room and board. Education is free

Free to them not to us the taxpayer

Your image above the $14,000 comment didn't come through

and Bill says they have a chicken. They. Used to have pigs and a goat, but they moved them to the farm.

The "farm"?. I'd like to see that

He also said he does not think they get money from the state for those kids because it would be a state scholarship, and if they're not a US citizen, he don't think they would qualify

Well if it's just a $14,000 per student for five months at 23 students that's $322,000 for five months!

Tax free because they're 5013C

Did you forward channel 3 the additional pictures I sent you of the molding walls, holes in the walls etc.

Channel 3 is just now getting to lighthouse school

Great we're due there in 45 minutes lol

Send me the contact name and number for the lady in the neighborhood you spoke to. And then text her and ask her if it's OK if we give her number to the Gulf breeze news

Standby



Messages - Jonathan Kanzigg

Ok

Headed to Lighthouse Christian Academy for their school inspection. Going to see how good this flak vest actually works lol.

3/6/2024 3:34:08 PM



Nice

PNJ called me also.

Let me know if you hear back from the lady on refuge about giving the number to the

GBN



Are you headed back to the office now?

Yes

Call me when you get a chance. No hurry just something I learned when I was at lighthouse. I forgot to tell you.

Ok ima a few

https://weartv.com/news/local/concerns-raised-about-overcrowded-house-of-foreign-students-in-gulf-breeze

Things are starting to get heated in that neighborhood! Mrs. Skinner just sent me this text and video. Can't really tell what's going on till about mid video but I guess there's confrontation going on and then you can see multiple kids just streaming towards the house and then you see one of the neighbors come over and go oh my god did you see him blow me a kiss they're being rude and then they comment on one of the kids said why are you attacking Christians. These residents are fed up all ready.

"We just did a video of 26 kids getting off the bus. Also the kids were very rude and saying things and the coo pulled up to the neighbor and he came in hot and was very upset"

52.    On March 6, 2024, Kanzigg also texted WEAR Channel 3 News Team anchor/reporter, Tanner Stewart, to help generate negative press about Lighthouse and sent him photos of the private interiors and contents of the New Hope Road Homes:



24



53.    As Kanzigg and Midway intended, on March 6, 2024, WEAR published

the article "*Concerns raised about overcrowded house of foreign students in Gulf Breeze*"

[https://weartv.com/news/local/concerns-raised-about-overcrowded-house-of-

foreign-students-in-gulf-breeze] (the "**March 6 WEAR Article**"):



**Concerns raised about overcrowded house of foreign students in Gulf Breeze**

by Tanner Stewart | Wed, March 6th 2024 at 4:35 PM

Updated Wed, March 6th 2024 at 7:36 PM

54.    In the March 6 WEAR Article, Kanzigg is quoted as saying "there are too many people living at the home….it's far beyond occupancy laws and is **posing a serious threat to the community**" (emphasis added) and claimed that "his department is now accountable for their wellbeing" and that "[s]ince we have knowledge of it, we are absolutely 100% responsible to look after these kids," and "have communicated with them to the best of our ability, got a goal to work with them to get this resolved." All these statements are false.

55.    Kanzigg also falsely stated to WEAR that "this isn't the first incident like this with Lighthouse Christian Academy.  Two months ago, they were forced to move

26

students in Pensacola from unsafe conditions." Lighthouse was not forced to move students in Pensacola from any unsafe conditions and had not done anything wrong.

56.    Upon information and belief, Taylor Bishop was also interviewed (albeit "anonymously") at or around the same time as Kanzigg for the March 6 WEAR Article, and she stated, "I would be very, very concerned that the school I sent my child to was putting them up in conditions like this."

57.    Midway personnel promptly circulated the March 6 WEAR Article internally, including in texts making derogatory statements about Lighthouse:



58.     As noted in this text string, this all was occurring while Midway was deliberately refusing to cooperate with Lighthouse on other fire inspections.

59.     In particular, Lighthouse had an opportunity to purchase the property at 1645 Nanthahala Beach Road in Gulf Breeze, FL (located next to its corporate offices) for a greatly reduced price but on a very short time frame.  To do so, Lighthouse needed a fire inspection of the property, but Midway refused to inspect the property to confirm that it would be suitable for a school, which caused the potential sale to fall through.

60.     Instead, Midway was actively promoting the WEAR March 6 Article on its Facebook page in a post asking residents to "please share" the article and stating "this is the only way we have been able to get the Christian school's attention," which prompted others to post negative comments concerning "human trafficking":

28



61.    Kanzigg also sent the WEAR March 6 Article to Pensacola Fire Department Chief Ginny Cranor and Midway Commissioner Richard Delp.

62.     On March 7, 2024, WEAR published the article "*Parent details Lighthouse Christian Academy's alleged faults amid crowded home complaints*" [https://weartv.com/news/local/parent-details-lighthouse-christian-academys-alleged-faults-amid-crowded-home-complaints] (the "**March 7 WEAR Article**"), in which Kanzigg falsely stated that "there had been over 20 students living there with little to no supervision," while continuing to spreading false information about Lighthouse to create panic within the community.

63.     On March 8, 2024, Kanzigg sent an email to Midway Fire Commissioners Neal Carter, Bob Murphy, John Poole, Richard Delp, and Justin Labrato, falsely stating that the Santa Rosa Sheriff is "good friends with the owner of [Lighthouse]" and that the "Major with SRSO is related to the owner of Lighthouse School":

**From:** Jonathan Kanzigg <jonathan.kanzigg@midwayfire.com>
**Sent:** Friday, March 08, 2024 2:19 PM EST
**To:** Neal Carter <neal.carter@midwayfire.com>; Bob Murphy <bob.murphy@midwayfire.com>; John poole <john.poole@midwayfire.com>; Richard Delp <richard.delp@midwayfire.com>; Justin Labrato <justin.labrato@midwayfire.com>
**CC:** Missy Scarborough <missy.scarborough@midwayfire.com>; Velina Buckley <velina.malinowski@midwayfire.com>
**Subject:** Weekly Report
**Attachment(s):** "FORECASTING 02292024.xls","Feb 2024 Balance Sheet.pdf","Fy2024 Income Statement as of 02292024.xlsx","Raftelis_Proposal Impact Fee Study.pdf","Anser (2).pdf","DRAFT Minutes 2-13-24.doc","AGENDA 3-12-24.doc","DC Report 02_2024.pdf"

I have attached two contracts for services. One is for the fire fee, and the other is for the impact fees. We have already provided the data for the assessment fee study. On Monday, we have a kickoff meeting with Raftelis about the impact fees.

BC Brewer turned in his retirement notice. His last day will be April 1st. He goes home at 0800 that morning. With him and Jeff Fangman leaving, we will have two vacancies. We will fill those positions with OT until we get the fee assessment study back from the consultant. This could keep us from discussing layoffs if it is determined we need to make cuts.

I will have my monthly report to you before the meeting on Tuesday. I am waiting on some data to complete it.

Below is part three of the WEAR news story. When you watch the story, keep in mind the Sheriff is good friends with Lighthouse School's owners, and the Major with SRSO is related to the owner of Lighthouse School. The Major might be our next Sheriff. This is a tricky situation with him, so I am walking lightly; the Major was in Tallahassee being recognized by the Florida House when our bill was being voted on. Small world right? I have heard through the grapevine that he has been inquiring about reaching out to this board because he is concerned about me and our actions against the Lighthouse School. I do anticipate some of the residents from the neighborhood where the kids are staying to attend your meeting.
Parent details Lighthouse Christian Academy's alleged faults amid crowded home complaints (weartv.com)

Have a great weekend.

--
Jonathan Kanzigg
Fire Chief
Midway Fire District
1322 College Pkwy.
Gulf Breeze. Fl 32563
850.932.4771
jonathan.kanzigg@midwayfire.com

64.     On March 9, 2024, Midway Commissioner Richard Delp responded to Kanzigg with a warning about not having "enforcement authority" over the situation with Lighthouse and confirming that "[w]e are not responsible for these kids":

**From:** richard.delp <richard.delp@midwayfire.com>
**Sent:** Saturday, March 09, 2024 1:31 PM EST
**To:** Jonathan Kanzigg <jonathan.kanzigg@midwayfire.com>
**Subject:** RE: Weekly Report

As long as our actions are based on adopted fire standards that are being violated, there should be no worries. I would think that there are state laws that address these conditions, its a matter of who is the enforcing agency. As much as I am concerned about the living conditions, if we don't have enforcement authority we can only make the agency having authority aware and let them take action. We are not responsible for these kids. I'm not trying to sound cold, just want us to stay within our lane.

Sent via the Samsung Galaxy Note20 Ultra 5G, an AT&T 5G smartphone

65.     On March 7, 2024, WEAR published another article entitled, "*At least 23 students living in 3,000 square-foot Florida home; residents voice concern*" [https://turnto10.com/news/nation-world/at-least-23-students-living-in-3000-square-foot-florida-home-residents-voice-concern-santa-rosa-county-lighthouse-christian-academy-gulf-breeze-sports-fire-code-chief-answers], which reported that Kanzigg "said there are too many people living at the home" and "believes this issue goes beyond a nuisance for neighbors—it's far beyond occupancy laws and is ***posing a serious threat to the community***," (emphasis added) and that "Lighthouse Christian Academy officials knew what they did was wrong":



# At least 23 students living in 3,000-square-foot Florida home; residents voice concern

by TANNER STEWART | WEAR | Thu, March 7th 2024 at 5:43 PM

**Updated** Thu, March 7th 2024 at 5:47 PM

*At least 23 students living in 3,000-square-foot Florida home; residents voice concern (WEAR)*

**TOPICS:**   FLORIDA   STUDENTS   LIGHTHOUSE CHRISTIAN ACADEMY   NEIGHBORS   CHIEF   >

SANTA ROSA COUNTY, Fla. (WEAR) — Residents in a Florida community are furious over their new neighbors.

> Since we have knowledge of it, we are absolutely 100% responsible to look after these kids," he said. "We have communicated with them to the best of our ability, got a goal to work with them to get this resolved. But they knew this was wrong.
>
> Chief Kanzigg said this isn't the first incident like this with Lighthouse Christian Academy.
>
> Two months ago, they were forced to move students in Pensacola from unsafe conditions. WEAR News is working to catch up with Pensacola officials on what they discovered and how this will get resolved.

66.     On March 8, 2024, Kanzigg texted with Santa Rosa Emergency Management Director Brad Baker about Lighthouse and repeated the false statements about Johannes being friends with the Santa Rosa Sheriff and having a familial relationship between with the SRSO Major while stating that "[o]ur next move is a citation to appear before a judge for interfering with code":



67.     On March 12, 2024, Kanzigg and Osban texted about the Department of Children and Families ("DCF") investigation they had initiated against Lighthouse and coordination of actions against Lighthouse with Pensacola Fire Marshal Jose Cobb:



68.     On March 12, 2024, Kanzigg also texted Pensacola Fire Chief Ginny Cranor about the DCF investigation of Lighthouse that he and Midway initiated, which Kanzigg referred to as a "raid" and "mission":

3/12/2024 3:49:25 PM

The state DOE and children and family services are going to do a raid on lighthouse school and properties tomorrow. Apparently they do not have a boarding license. And they are not licensed to have a college. They were very interested in what had occurred in Pensacola and I'm sure they'll be reaching out to your office because they're not supposed to house people there either.

3/13/2024 8:55:34 AM

The mission has been pushed until tomorrow

Not sure if they are headed to Pcola .

Thanks for the heads up. I'm in an all-city leadership training until 3 today. I'll let you
Know what I hear.

Please ask the city to not communicate with SRSO

Of course. Not our business yet. I didn't tell fire marshals office. Other than the public records request we received from WEAR 3

36

3/14/2024 2:45:42 PM

Any news?

As soon as I hung up with you, Tanner from Channel 3 news, text me asking for any updates. This is what he sent me.-From Tanner at Channel 3, he asked me if there was any follow up-Interesting.
She also declined to answer my email to confirm if she travels overseas to recruit.
She told me they didn't.
But I have a fb post of lighthouse staff in Brazil.
After I asked her this, the fb post was removed.



🫢

This is what he also sent me

I told him that I contacted the sheriff today to let him know that he was misinformed on his news interview

This is what he sent me-He may also need to be informed that Joanna Johannes is the treasurer of the SRSO Star Foundation.
He failed to mention that

And -There's also a member of the SO on the Lighthouse board

Dude. I don't even know what to say. Senator's office made the call to investigate. Right? Right thing to do

69.   On March 14, 2024, DCF visited Lighthouse and concluded that the Brazilian exchange students were well cared for and their living conditions were appropriate.

70.   On April 3, 2024, Kanzigg and Osban texted about "pushing" off a Lighthouse inspection that would have allowed the Brazilian students to return to the New Hope Road Homes and admitted that (as originally requested by Johannes) students could have been housed in each residence without fire sprinkler systems:



71.   Throughout this campaign of harassment and retaliation against Lighthouse, Midway personnel were also conducting research about Lighthouse that was unrelated to any fire-safety issues:

From: Missy Scarborough <missy.scarborough@midwayfire.com>
Sent: Monday, March 04, 2024 8:41 PM EST
To: Jonathan Kanzigg <jonathan.kanzigg@midwayfire.com>; Michael Osban <michael.osban@midwayfire.com>
Subject: lighthouse

This is the organization Lighthouse Private Christian Academy gets its accreditation through – Christian Schools of Florida. I could be wrong but it would seem to me that Joanna Johannes being an Executive Committee Member for the organization that "accredits" them would pose a conflict.

https://csfla.org/news/legislature-responds-to-voucher-problems

Since Florida has become the largest provider of public vouchers for private schooling in the country, lawmakers now expect organizations administering this money on the state's behalf to clarify what parents can spend it on.

Meanwhile, state officials are looking into bringing more scholarship funding organizations to the state. Vouchers are typically worth about $7,700. For students with special needs who are eligible for a "unique abilities scholarship," that figure can run up to $10,000, according to Step Up for Students, the state's primary scholarship funding organization.

Step up for Students seems to be the conduit organization that connects the nonpublic schools with free money directly from the state's budget.

Lighthouse Private Christian Academy's website provides K-12 Scholarships in Florida information – each link, regardless of the scholarship category go directly to the Step Up for Students website – so this is where the money is coming from -

https://lighthousepca.com/enrollment/k-12-scholarships-in-florida/

*Missy Scarborough*
*Administrative Chief*
**Midway Fire District**
**1322 College Parkway**
**Gulf Breeze, FL 32563**

www.midwayfire.com
850-932-4771
850-934-1333 fax

72.    Kanzigg eventually revealed in social media messages about the situation with Lighthouse that throughout their campaign of harassment and retaliation he and Midway knew they had no power or authority to be taking the actions in which they had been engaged against Lighthouse, particularly as to private residences:

39

The fire department does not deal with zoning issues that is a county issue. My advice on that is to email the county commissioners repeatedly. It's kind of tricky because it's a private home and then there are rights for private residence like Airbnb and VRBO's. Trust me if I had my way, I would drop the ha     . But this is a very political issue with the

he hammer. But this is a very political issue with the county the sheriff, the congressman, the county attorney and of course the residence and that's what really matters along with the children. It's a tricky situation for me because if I feel the kids are safe I'm gonna make accommodation which I'm expected to do but if I don't feel safe, then that's the sword I will die by

73.     Kanzigg's social media messages further revealed his animosity toward Lighthouse:

here is no truth with them. I met her 15 years ago when she opened the school at the zoo without permits and inspections. I have said this for years. I have never met a more deceitful person who hides the truth. Colin is just full of it and can't remember one st.... the next. The only w.... ot their attention then was

ore deceitful person who hides the truth. Colin is just full of it and can't remember one story to the next. The only way I got their attention then was contacting the Florida Christian schools Association. But now she is on the Board of Directors for the same group that our credits her school and hold her accountable.

74.    Kanzigg also openly admitted that Lighthouse had not done anything wrong and that he and Midway "**went hard with the media**" because the "**code prevents us from taking action**":

grand slam. It just took me a couple days to get all the media on board to roll out the same day so they would not see it coming. And give us time to study the codes, talk with county attorney, and pu... s on their other proper...

The sheriff and her are friends. The Major at the Sheriffs office is married to Joanna sister, who works with Li... use. The no law is true b... the code has ...een broken. He said state

42

iends. The Major at the Sheriffs office is married to Joanna sister, who works with Lighthouse. The no law is true but the code has been broken. He said state statute he can enforce, and he is right. He cannot enforce codes. Now they have moved into a house not zoned commercial, thats where the code prevents us from taking action. Thats why w    t hard with the media.    he public be the dge of what's right and

not zoned commercial, thats where the code prevents us from taking action. Thats why we went hard with the media. Let the public be the judge of what's right and wrong.

My belief is the major is being groomed to be the next sheriff. People have let me know he has been asking about my employment and how that can change. And how "people" can get on our board of fire commissioners. Which is a hint to get rid of me. No proof just insinua... The sheriff is close w... our Senator who also would not loose

board of fire commissione Which is a hint to get rid of me. No proof just insinuations. The sheriff is close with an our Senator who also would not loose any sleep if I left. lol you can't make this stuff up. I am sorry you Are going through this. My ultimate goal is for them to build a facility or modify the existing buildings they have to com... code and get those ...oved in there and out of your

45

75. Nevertheless, Kanzigg continued texting with the media to continue generating negative publicity about Lighthouse:



3/14/2024 3:11:33 PM

I was able to get the documents I requested from the fire marshal, are you aware of additional action taken at Lighthouse lately?

Yes, a representative from Department of children and families visited the school today and the home where the children were moved to.

Fire Marshall accompanied her to the home with all the neighbors that have been complaining

The representative from children's and family said she was going to visit all their campuses and had requested a lot of information all due very soon

Thank you

I put in a request to DCF last week and expecting to hear back by tomorrow.

At our board meeting on Tuesday night we had about 30 of the residence from Waters edge neighborhood attend. We addressed the group as a hole and told them that there was an action being taken behind closed doors.

Is this meeting streamed anywhere?

No sorry

All good

I keep getting calls from parents and teachers there

46



Messages - Tanner Wear TV3

You can't make this stuff up. The owner of lighthouse school Joanna told the person from Department of children and families today that the fire department was out to get them and wanting revenge. And that a firefighter's wife had an affair with someone at the school and had to be removed and her children removed from the school. That's why the fire department was coming after them. First that would be unethical of course and second this was the first we were hearing about it. I wish they would share the names of those people so we could follow up on that.

Interesting.
She also declined to answer my email to confirm if she travels overseas to recruit.
She told me they didn't.
But I have a fb post of lighthouse staff in Brazil.
After I asked her this, the fb post was removed.

The home the kids are in was bought from the lady that is lighthouses lunchroom lady for $500,000 for $10,000 prof. Now owned by one of Joanne's companies. Today when our fire marshal was allowed in the home there were 17 beds inside.

The good news the kids seemed to be well taken care of. Can you send me a picture of them in Brazil.

Liked "The good news the kids seemed to be well taken care of. Can you send me a picture of them in Brazil. "





76.     On March 20, 2024, the *Navarre Press* published the article "*School scrutinized, owner responds*" [https://navarrepress.com/school-scrutinized-owner-responds/] (the "**Navarre Press March 20 Article**").

77.     Internally at Midway, Kanzigg, Valina Malinowski (Midway Financial Coordinator), and Shannon Stone (Current Midway Fire Chief) joked about the Navarre Press March 20 Article because they saw it as defending Lighthouse:



Velina Malinowski

🙄 we were quite surprised to find out they were being shady and wouldn't budge until the spotlight turned on them.... Classic case of deflection to try and muddle over the truth.

3/20/2024 7:32:42 PM

Shannon Stone

Shannon Stone

Lighthouse is getting hammered in the handful of posts that have commented on this article. Classic

Jonathan Kanzigg

Good, I had a talk with the Capt and Major from SRSO today. I am walking lightly . There advice as well as a few others.



Missy Scarborough

I loved the part in the article where Joanna told Navarre press that the DCF employee told her she was impressed with the accommodations for the Brazilian students. 🙂

Missy Scarborough

I guess all these people commenting were also busted having affairs with her employees and they too are just disgruntled.

It really shows the level of pathological when a person will allow a media outlet to post an article full of their lies, totally oblivious to the concept that anyone can and will respond to call out the lies.

3/21/2024 6:46:22 PM



78.     Midway also continued joking internally about the DCF investigation of Lighthouse they initiated,  referring to it as a "*raid*" and even as a "*shootout*" at Lighthouse:

How'd the raid go this morning? Any big shoot outs?

ed from Michael's iPhone (DX3Y41A8JCLM) on 6/27/2024 10:28:53 AM with iMazing by DigiDNA. Database hen extracted: 6/27/2024 10:11:06 AM

Page 4 of 5

ges - Jamie Chandler

Lol no, but it was interesting. We got there at about 7 o'clock knocked on the door no answer knock knock knock no answer. Then we drove around. Talked to a couple of residents and then I took the DCF agent over to the school for her to talk to the admin about supplying her with Files and when I got back to the station one of the residents called me and said they're coming out of the house they were there the whole time. They were hiding in the house and would not answer the door, but we eventually got in the house. There were 17 beds in the house! Long story short is they have till the end of business day tomorrow to supply DCF with the records they requested or DOE's coming down on them. There's more ins and outs, but that's the gist of it.

Delivered

Wow

At approximately 2000 hours today Engine 37 embarked on an undercover and highly classified mission that was intel based only and required certain finesse to avoid detection. Well we did not have that finesse, we were met by the one known as "Roll Tide Willy" in the street asking us if we were lost while we were standing right next to our super secret undercover school bus that def did not have any identifiable markers on it. We rendezvoused back at our extraction vehicle and made quick work leaving enemy territory. All members are accounted for.

3/17/2024 1:14:08 PM

That's funny shit!!

52

79.     On June 5, 2024, Lighthouse delivered Notice of Intent to Pursue Litigation to Kanzigg and Midway, including  a public records request under Chapter 119, *Florida Statutes*, for (among other things) Kanzigg's and Midway's written communications related to Lighthouse.

80.     On June 10, 2024, Kanzigg sent the following email to Johannes, in which he admits liability for the claims alleged herein:

From: **Jonathan Kanzigg** <jonathan.kanzigg@midwayfire.com>
Date: Mon, Jun 10, 2024 at 9:48 AM
Subject: Fire Department
To: <dr.joannajohannes@gmail.com>

I received the notice from your attorney with intent for legal action. I wanted to reach out to you before everything is official and I am prohibited from communicating. Regardless of the actions moving forward, I understand the situation I have put you in. Although I do not know your pain nor will I pretend to. I made two mistakes in my career as fire chief that I will regret for a lifetime. Both have been how I reacted when dealing with members of the public. If you would ever allow it, I would request to meet with you and your team to sincerely apologize for how I handled your school's code enforcement. Regardless of the outcome of the suit, I will still sincerely apologize if given the opportunity. I realize how I alone handled this, it may or may not be forgiven, but there will be consequences.

After communicating with my board, I am going to resign from my employment this week. I know the department cannot move forward without my leadership. In addition to my email, I will produce any form of apology you request, TV media through video, letters, or even being an advocate for the school.

I have been pleased with all the measures your school has taken to make everything up to our fire standards. Now I have taken the time to learn more about the programs and see all the wonderful things you are building for our community; I want to help support you in any way I can. These are things I should have done in the beginning but became caught up with reaction and emotion. It might be through volunteer hours to help with odd jobs and maintenance for the school. I truly do want your school to succeed in our community. Just thoughts?

The only thing I ask is your to reconsider legal action against the FD. Finance is a major issue, and moving forward only hinders the firefighters and Board members who had no hand in this. I will meet any of your requests to make this right. Regardless of your decision, I ask for forgiveness.

--
Jonathan Kanzigg
Fire Chief
Midway Fire District
1322 College Pkwy.
Gulf Breeze, Fl 32563
850.932.4771
jonathan.kanzigg@midwayfire.com

81. Defendants' animus toward Lighthouse throughout their campaign of harassment and retaliation is readily obvious based on the deliberate, disparate treatment and targeting of Lighthouse.

82. In addition to Kanzigg's long-standing animosity toward Lighthouse and Johannes, Defendants' communications and public statements demonstrate that they also targeted and retaliated against Lighthouse because of Lighthouse's enrollment of Latin foreign exchange students.

83. Defendants' above-described actions violated Lighthouse's clearly established fundamental rights, privileges, and liberties, including its rights to equal protection and due process under the Fourteenth Amendment and freedom from unreasonable searches and seizures under the Fourth Amendment.

84. Defendants' above-described actions also violated Lighthouse's clearly established fundamental rights and liberty to contract and use property as it wills.

85. Defendants' above-described actions also violated Lighthouse's clearly established fundamental right to protect its reputation.

86. One's reputation is a fundamental right entitled to "unusually high protection," because "[t]he personal interest in one's own good name and reputation surpasses economics, business practices or money" and is "a fundamental part of personhood, of individual standing[,] and one's sense of worth," and "reflects no more

54

than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty."[2]

87.    Lighthouse also has the right to be free from retaliation for exercising all of its foregoing fundamental rights, privileges, and liberties.

88.    By engaging in the conduct set forth above, Defendants violated Lighthouse's constitutional and federally protected rights while acting under color of state law, including as willful participants in joint action with other state agents.[3]

89.    Lighthouse's protected rights, privileges, and liberties outweigh any alleged interests Defendants may claim to have had in violating, limiting or restricting Lighthouse's rights.

## The Consequences of Defendants' Actions

90.    Defendants' above-described actions had immediate and devastating impacts on Lighthouse and continue to cause Lighthouse to suffer considerable harm and damages.

91.    As a direct and proximate result of Defendants' actions, Lighthouse lost $995,000 in funding from the state of Florida that it was set to receive pursuant to a

---

[2] *Roque v. Swezy*, 2026 WL 157717, *2 (Fla. 3d DCA Jan. 21, 2026); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990) (quoting *Rosenblatt v. Baer*, 383 U.S. 75, 86 and 92-93 (1966)); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974); *Holter v. HLCY T.V., Inc.*, 366 So.2d 445, 451 (Fla. 2d DCA 1978); *Lawnwood Med. Ctr., Inc. v. Sadow*, 43 So. 3d 710, 729 (Fla. 4th DCA 2010); *Layne v. Tribune Co.,* 108 Fla. 177, 146 So. 234, 238 (1933); *Pullum v. Johnson*, 647 So.2d 254, 256 (Fla. 1st DCA 1994); *Doe v. Finkelman*, 2025 WL 3466498, *4 (Fla. 4th DCA Dec. 3, 2025).

[3] *Dennis v. Sparks*, 449 U.S. 24, 28-29 (1980).

Local Funding Initiative Request, which would have helped support the school's mission to keep economically disadvantaged, at-risk, and special needs students involved in athletics and provide a facility to host disabled veterans and special needs children's athletic events, reduce community health risk factors, and serve as a hurricane shelter for the Tri-County area.

**The Florida Senate**
**Local Funding Initiative Request**
**Fiscal Year 2024-2025**

LFIR # 3155

**1. Project Title** — Lighthouse Private Christian Academy-Sports Complex

**2. Senate Sponsor** — Doug Broxson

**3. Date of Request** — 12/11/2023

**4. Project/Program Description**

Fulfill Lighthouse mission to keep economically disadvantaged, at-risk, & special needs students in athletics via construction of first community collegiate sized gym able to host tournaments. Build middle school athletics in counties where public schools do not offer middle school level competition. Host disabled veterans and special needs children for wheelchair basketball. Reduce community health risk factors. Gym will also serve as a hurricane shelter for Tri-County area.

**5. State Agency to receive requested funds** — Department of Education

**State Agency contacted?** — Yes

**6. Amount of the Nonrecurring Request for Fiscal Year 2024-2025**

| Type of Funding | Amount |
|---|---|
| Operations | 0 |
| Fixed Capital Outlay | 995,000 |
| Total State Funds Requested | 995,000 |

**7. Total Project Cost for Fiscal Year 2024-2025 (including matching funds available for this project)**

| Type of Funding | Amount | Percentage |
|---|---|---|
| Total State Funds Requested (from question #6) | 995,000 | 43% |
| Matching Funds | | |
| Federal | 0 | 0% |
| State (excluding the amount of this request) | 0 | 0% |
| Local | 150,000 | 7% |
| Other | 1,160,000 | 50% |
| Total Project Costs for Fiscal Year 2024-2025 | 2,305,000 | 100% |

**8. Has this project previously received state funding?** — No

| Fiscal Year (yyyy-yy) | Amount | | Specific Appropriation # | Vetoed |
|---|---|---|---|---|
| | Recurring | Nonrecurring | | |
| | | | | |

**9. Is future funding likely to be requested?** — No

a. If yes, indicate nonrecurring amount per year.

b. Describe the source of funding that can be used in lieu of state funding.

**10. Has the entity requesting this project received any federal assistance related to the COVID-19 pandemic?**
No

92.    Defendants' actions also directly and proximately caused Lighthouse to suffer damages of at least $623,000 in lost tuition from Brazilian exchange students, who not only disenrolled from but have also never returned to Lighthouse.

93.    Defendants' actions also directly and proximately caused Lighthouse's enrollment of domestic students to drop, resulting in losses of approximately $799,000.

94.    Lighthouse was also improperly forced to expend approximately $150,000 on fire sprinkler systems for the New Hope Road Homes, which also left these properties in a condition that makes it extremely difficult if not impossible to sell for their intended use:





95.    Defendants' collusion with the Pensacola Fire Department also directly and proximately resulted in damages of approximately $150,000 when Lighthouse was forced to remove students from their previously approved housing and install unnecessary fire sprinkler systems at that location as well:





96.     In addition to the substantial economic losses Lighthouse suffered, it is also entitled to recover significant damages for the reputational harm, including impairment of reputation and standing in the community, caused by Defendants' actions.

97.     Lighthouse's reputation continues to suffer publicly and online, including with colleges and universities with which it has dual enrollment agreements, its accreditation partners, and the general public.   Online searches for Lighthouse inevitably result in the March 6 WEAR Article and others containing Kanzigg's false statements about Lighthouse at or near the top of search results.

98.     Stating, delivering or transmitting false and libelous statements to the media for publication, thereby securing publication of such statements, is unlawful. See § 836.09, *Fla. Stat.*

99. On June 5, 2024, Lighthouse provided Notice of its claims under section 768.28, *Florida Statutes*, to Kanzigg and Midway.

100. Lighthouse retained the undersigned attorneys to represent it in this action and is obligated to pay them a reasonable fee for their services.

## COUNT I
### [42 U.S.C. §1983—Violation of Civil Rights –Kanzigg]

101. Lighthouse re-alleges paragraphs 1 through 100 as if fully set forth herein.

102. This is an action under 42 U.S.C. §1983 against Kanzigg for violating and depriving Lighthouse of its civil rights while acting under color of state law.

103. Lighthouse has and holds protected rights, privileges, and liberties under the U.S. Constitution and Federal law and the right to be free from retaliation for exercising its constitutional and federally protected rights, privileges, and liberties.

104. Kanzigg's actions described in paragraphs 25-29, 32-34, 36-40, 43-46, 48-55, 61-68, 70, 72-75, and 80-82, individually and in a supervisory capacity, deprived and facilitated and/or encouraged others to deprive Lighthouse of its protected rights, privileges, and liberties.

105. At all times material, Kanzigg acted under color of state law and/or was jointly engaged with other state actors or officials acting under color of state law.

106. Kanzigg violated Lighthouse's clearly established rights and did so in bad faith, with malicious purpose, and/or in a manner exhibiting wanton and willful disregard of Lighthouse's rights and interests.

107. Kanzigg singled out Lighthouse for discriminatory treatment on an irrational and wholly arbitrary basis and was motivated by spite and lacked any legitimate objective.

108. Kanzigg's actions fell outside the scope of his authorized responsibilities, he was not acting within the scope of his discretionary authority, and he knew or reasonably should have known that his actions did and would violate Plaintiff's federal rights.

109. As a direct and proximate result of Kanzigg's unlawful conduct, Lighthouse suffered and is entitled to recover the damages alleged in paragraphs 90-97, above.

110. As a direct and proximate result of Kanzigg's unlawful conduct, Lighthouse also suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources that could have been expended on its schools and students, to protect and defend itself against Kanzigg's unlawful misconduct; all of which Lighthouse is entitled to recover under the wrongful act doctrine.

111. In addition to the quantifiable monetary damages Lighthouse suffered, it has also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Kanzigg is not enjoined from violating Lighthouse's fundamental rights, privileges and liberties.

112. Kanzigg's unlawful conduct is likely to continue and cause additional harm and injuries if it persists.

113.   The public interest, most notably the interests of Lighthouse's students, their parents, and staff, would be served by the entry of an injunction prohibiting Kanzigg's unlawful conduct.

114.   Based upon the facts alleged herein and to be established at trial, Lighthouse has the clear legal right to the entry of an injunction prohibiting Kanzigg from violating Lighthouse's rights, privileges, and liberties.

115.   Kanzigg's actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lighthouse.   Accordingly, Defendant's actions are not privileged and they entitle Lighthouse to recover punitive damages.

**WHEREFORE,** Plaintiff, Lighthouse, demands judgment against Defendant, Kanzigg, awarding:

A.   Compensatory damages in appropriate amounts to be established at trial;

B.   Special damages in appropriate amounts to be established at trial;

C.   Punitive Damages in appropriate amounts to be established at trial;

D.   A declaration that Kanzigg's acts violate 42 U.S.C. §1983;

E.   Injunctive relief prohibiting Kanzigg from violating 42 U.S.C. §1983;

F.   Reasonable attorneys' fees and costs associated with this action; and

G.   Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT II
### [42 U.S.C. §1983—Retaliation—Kanzigg]

116.  Lighthouse re-alleges paragraphs 1 through 100 as if fully set forth herein.

117.  This is an action under 42 U.S.C. §1983 against Kanzigg for retaliation against Lighthouse for exercising its fundamental rights, privileges, and liberty while acting under color of state law.

118.  Lighthouse has and holds protected rights, privileges, and liberties under the U.S. Constitution and Federal law and the right to be free from retaliation for exercising these constitutional and federally protected rights, privileges, and liberties.

119.  Lighthouse exercised its protected rights, privileges, and liberties by operating its school and enrolling and entering into contracts with Brazilian exchange students under the SEVP program.

120.  By engaging in the actions described in paragraphs 25-29, 32-34, 36-40, 43-46, 48-55, 61-68, 70, 72-75, and 80-82, Kanzigg retaliated against Lighthouse for exercising its protected rights.

121.  At all times material, Kanzigg acted under color of state law and/or was jointly engaged with other state officials or actors acting under color of state law.

122.  Kanzigg's retaliatory actions described in paragraphs 25-29, 32-34, 36-40, 43-46, 48-55, 61-68, 70, 72-75, and 80-82, would chill a person of ordinary firmness from continuing to engage in the protected activities in which Lighthouse was engaged.

123. Kanzigg singled out Lighthouse for retaliation and discriminatory treatment on an irrational and wholly arbitrary basis and was motivated by spite and lacked any legitimate objective.

124. Kanzigg's retaliatory actions adversely affected Lighthouse's protected activities and were causally connected to Lighthouse's protected activities.

125. Kanzigg's retaliatory acts amount to a threat, coercion, or intimidation through intimating that punishment, sanctions, or adverse regulatory action would immediately follow.

126. Kanzigg violated Lighthouse's clearly established rights and did so in bad faith, with malicious purpose, and/or in a manner exhibiting wanton and willful disregard of Lighthouse's rights and interests.

127. Kanzigg's actions fell outside the scope of his authorized responsibilities, he was not acting within the scope of his discretionary authority, and he knew or reasonably should have known that his actions did and would violate Plaintiff's federal rights.

128. As a direct and proximate result of Kanzigg's unlawful conduct, Lighthouse suffered and is entitled to recover the damages alleged in paragraphs 90-97, above.

129. As a direct and proximate result of Kanzigg's unlawful conduct, Lighthouse also suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources that could have been expended on its school

and students, to defend against Kanzigg's unlawful misconduct; all of which Lighthouse is entitled to recover under the wrongful act doctrine.

130. In addition to the quantifiable monetary damages Lighthouse suffered, it has also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Kanzigg is not enjoined from violating Lighthouse's fundamental rights, privileges and liberties.

131. Kanzigg's unlawful conduct is likely to continue and cause additional harm and injuries if it persists

132. The public interest, most notably the interests of the students and staff of Lighthouse and their parents, would be served by the entry of an injunction prohibiting Kanzigg's unlawful conduct.

133. Based upon the facts alleged herein and to be established at trial, Lighthouse has the clear legal right to the entry of an injunction prohibiting Kanzigg from violating Lighthouse's rights, privileges, and liberties.

134. Kanzigg's actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lighthouse. Accordingly, Defendant's actions are not privileged and they entitle Lighthouse to recover punitive damages.

**WHEREFORE,** Plaintiff, Lighthouse, demands judgment against Defendant, Kanzigg, awarding:

> A. Compensatory damages in appropriate amounts to be established at trial;

B.    Special damages in appropriate amounts to be established at trial;

C.    Punitive Damages in appropriate amounts to be established at trial;

D.    A declaration that Defendant's acts violate 42 U.S.C. §1983;

E.    Injunctive relief prohibiting Defendant from violating 42 U.S.C. §1983; and

F.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT III
### [42 U.S.C. §1983—Equal Protection –Kanzigg]

135.   Lighthouse re-alleges paragraphs 1 through 100 as if fully set forth herein.

136.   This is an action under 42 U.S.C. §1983 against Kanzigg for violating and Lighthouse's right to equal protection.

137.   Lighthouse has and holds the right to equal protection under the U.S. Constitution and Federal law.

138.   Through his actions described in paragraphs 25-29, 32-34, 36-40, 43-46, 48-55, 61-68, 70, 72-75, and 80-82, above, Kanzigg intentionally treated Lighthouse differently from others similarly situated without any rational basis for such treatment, thus violating Lighthouse's right to equal protection.

139.   At all times material, Kanzigg acted under color of state law and/or was jointly engaged with other state actors or officials acting under color of state law.

66

140. Kanzigg violated Lighthouse's clearly established rights in bad faith, with malicious purpose, and/or in a manner exhibiting wanton and willful disregard of Lighthouse's rights and interests.

141. Kanzigg singled out Lighthouse for unequal treatment on an irrational and wholly arbitrary basis and was motivated by spite and lacked any legitimate objective.

142. Kanzigg's actions fell outside the scope of his authorized responsibilities, he was not acting within the scope of his discretionary authority, and he knew or reasonably should have known that his actions did and would violate Plaintiff's right to equal protection.

143. As a direct and proximate result of Kanzigg's unlawful conduct, Lighthouse suffered and is entitled to recover the damages alleged in paragraphs 90-97, above.

144. As a direct and proximate result of Kanzigg's unlawful conduct, Lighthouse also suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources that could have been expended on its schools and students, to protect and defend against Kanzigg's unlawful misconduct; all of which Lighthouse is entitled to recover under the wrongful act doctrine.

145. In addition to the quantifiable monetary damages Lighthouse suffered, it has also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Kanzigg is not enjoined from violating Lighthouse's fundamental rights, privileges and liberties.

146. Kanzigg's unlawful conduct is likely to continue and cause additional harm and injuries if it persists.

147. The public interest, most notably the interests of the students and staff of Lighthouse and their parents, would be served by the entry of an injunction prohibiting Kanzigg's unlawful conduct.

148. Based upon the facts alleged herein and to be established at trial, Lighthouse has the clear legal right to the entry of an injunction prohibiting Kanzigg from violating Lighthouse's rights, privileges, and liberties.

149. Kanzigg's actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lighthouse. Accordingly, Defendant's actions are not privileged and they entitle Lighthouse to recover punitive damages.

**WHEREFORE,** Plaintiff, Lighthouse, demands judgment against Defendant, Kanzigg, awarding:

A. Compensatory damages in appropriate amounts to be established at trial;

B. Special damages in appropriate amounts to be established at trial;

C. Punitive Damages in appropriate amounts to be established at trial;

D. A declaration that Defendant's acts violate 42 U.S.C. §1983;

E. Injunctive relief prohibiting Defendant from violating 42 U.S.C. §1983;

F.      Reasonable attorneys' fees and costs associated with this action; and

G.      Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT IV
### [42 U.S.C. §1983—Violation of Civil Rights –Midway]

150.    Lighthouse re-alleges paragraphs 1 through 100 as if fully set forth herein.

151.    This is an action under 42 U.S.C. §1983 against Midway for violating and depriving Lighthouse of its fundamental rights, privileges, and liberty under color of state law.

152.    Lighthouse has and holds protected rights, privileges, and liberties under the U.S. Constitution and Federal law, as well as the right to be free from retaliation for exercising these constitutional and federally protected rights, privileges, and liberties.

153.    Midway's actions described in paragraphs 25-82, above, violated and deprived Lighthouse of its protected rights, privileges, and liberties.

154.    At all times material, Midway acted under color of state law and/or was jointly engaged with other state actors or officials acting under color of state law.

155.    Midway's actions described herein constitute an unlawful course of action taken pursuant to decisions made by those with authority to make policy decisions on behalf of Midway and/or that were ratified and approved by persons with authority to make policy decisions on behalf of Midway.

69

156.    Midway violated Lighthouse's clearly established rights in bad faith, with malicious purpose, and/or in a manner exhibiting wanton and willful disregard of Lighthouse's rights and interests.

157.    Midway singled out Lighthouse for discriminatory treatment on an irrational and wholly arbitrary basis and was motivated by spite and lacked any legitimate objective.

158.    Midway knew or reasonably should have known that its actions did and would violate Plaintiff's constitutional and federally protected  rights.

159.    As a direct and proximate result of Midway's unlawful conduct, Lighthouse suffered and is entitled to recover the damages alleged in paragraphs 90-97, above.

160.    As a direct and proximate result of Midway's unlawful conduct, Lighthouse also suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources that could have been expended on its school and students, to protect and defend against Midway's unlawful misconduct; all of which Lighthouse is entitled to recover under the wrongful act doctrine.

161.    In addition to the quantifiable monetary damages Lighthouse suffered, it has also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Midway is not enjoined from violating Lighthouse's fundamental rights, privileges and liberties.

162.    Midway's unlawful conduct is likely to continue and cause additional harm and injuries if it persists

163. The public interest, most notably the interests of the students and staff of Lighthouse and their parents, would be served by the entry of an injunction prohibiting Midway's unlawful conduct.

164. Based upon the facts alleged herein and to be established at trial, Lighthouse has the clear legal right to the entry of an injunction prohibiting Midway from violating Lighthouse's rights, privileges, and liberties.

165. Midway's actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lighthouse. Accordingly, Midway's actions are not privileged and they entitle Lighthouse to recover punitive damages.

**WHEREFORE,** Plaintiff, Lighthouse, demands judgment against Defendant, Midway, awarding:

A. Compensatory damages in appropriate amounts to be established at trial;

B. Special damages in appropriate amounts to be established at trial;

C. Punitive Damages in appropriate amounts to be established at trial;

D. A declaration that Defendant's acts violate 42 U.S.C. §1983;

E. Injunctive relief prohibiting Defendant from violating 42 U.S.C. §1983;

F. Reasonable attorneys' fees and costs associated with this action; and

G. Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT V
### [42 U.S.C. §1983—Retaliation—Midway]

166. Lighthouse re-alleges paragraphs 1 through 100 as if fully set forth herein.

167. This is an action under 42 U.S.C. §1983 against Midway for retaliation against Lighthouse for exercising its fundamental rights.

168. Lighthouse has and holds protected rights, privileges, and liberties under the U.S. Constitution and Federal law and the right to be free from retaliation for exercising these constitutional and federally protected rights, privileges, and liberties.

169. Lighthouse exercised its protected rights, privileges, and liberties by operating its school and enrolling and entering into contracts with Brazilian exchange students under the SEVP program.

170. As alleged in paragraphs 25-82, above, Midway retaliated against Lighthouse for exercising these protected rights.

171. At all times material, Midway acted under color of state law and/or was jointly engaged with other state actors or officials acting under color of state law.

172. Midway's actions described in paragraphs 25-82, above, would chill a person of ordinary firmness from continuing to engage in the protected activities in which Lighthouse was engaged.

173. Midway singled out Lighthouse for discriminatory treatment on an irrational and wholly arbitrary basis and was motivated by spite and without any legitimate objective.

174. Midway's retaliatory actions adversely affected Lighthouse's protected activities and were causally connected to Lighthouse's protected activities.

175. Midway's acts amounted to a threat, coercion, or intimidation through intimating that punishment, sanctions, or adverse regulatory action would immediately follow.

176. Midway's actions described herein constitute an unlawful course of action taken pursuant to decisions made by those with authority to make policy decisions on behalf of Midway and/or that were ratified and approved by persons with authority to make policy decisions on behalf of Midway.

177. As a direct and proximate result of Midway's unlawful conduct, Lighthouse suffered and is entitled to recover the damages alleged in paragraphs 90-97, above.

178. As a direct and proximate result of Midway's unlawful conduct, Lighthouse also suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources that could have been expended on the school and its students, and other valuable efforts to protect and defend against Kanzigg's unlawful misconduct and conspiracy; all of which Lighthouse is entitled to recover under the wrongful act doctrine.

179. In addition to the quantifiable monetary damages Lighthouse suffered, it has also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Midway is not enjoined from violating Lighthouse's fundamental rights, privileges and liberties.

180. Midway's unlawful conduct is likely to continue and cause additional harm and injuries if it persists

181. The public interest, most notably the interests of the students and staff of Lighthouse and their parents, would be served by the entry of an injunction prohibiting Midway's unlawful conduct.

182. Based upon the facts alleged herein and to be established at trial, Lighthouse has the clear legal right to the entry of an injunction prohibiting Midway from violating Lighthouse's rights, privileges, and liberties.

183. Midway's actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lighthouse. Accordingly, Defendant's actions are not privileged and they entitle Lighthouse to recover punitive damages.

**WHEREFORE,** Plaintiff, Lighthouse, demands judgment against Defendant, Midway, awarding:

A. Compensatory damages in appropriate amounts to be established at trial;

B. Special damages in appropriate amounts to be established at trial;

C. Punitive Damages in appropriate amounts to be established at trial;

D. A declaration that Defendant's acts violate 42 U.S.C. §1983;

E. Injunctive relief prohibiting Defendant from violating 42 U.S.C. §1983; and

F.      Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT VI
### [42 U.S.C. §1983—Equal Protection –Midway]

184.    Lighthouse re-alleges paragraphs 1 through 100, as if fully set forth herein.

185.    This is an action under 42 U.S.C. §1983 against Midway for violating and depriving Lighthouse of its fundamental right to equal protection.

186.    Lighthouse has and holds the right to equal protection under the U.S. Constitution and Federal law.

187.    As alleged in paragraphs 25-82, above Midway intentionally treated Lighthouse differently from others similarly situated without any rational basis for such treatment and violated Lighthouse's right to equal protection.

188.    At all times material, Midway acted under color of state law and/or was jointly engaged with other state actors or officials acting under color of state law.

189.    Midway's actions described herein constitute an unlawful course of action taken pursuant to decisions made by those with authority to make policy decisions on behalf of Midway and/or that were ratified and approved by persons with authority to make policy decisions on behalf of Midway.

190.    As a direct and proximate result of Midway's unlawful conduct, Lighthouse suffered and is entitled to recover the damages alleged in paragraphs 90-97, above.

191. As a direct and proximate result of Midway's unlawful conduct, Lighthouse also suffered and incurred significant damages, including costs, attorneys' fees, expenses, time, energy and resources that could have been expended on its schools and its students, to protect and defend against Midway's unlawful misconduct and conspiracy; all of which Lighthouse is entitled to recover under the wrongful act doctrine.

192. In addition to the quantifiable monetary damages Lighthouse suffered, it has also suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law if Midway is not enjoined from violating Lighthouse's fundamental rights, privileges and liberties.

193. Midway's unlawful conduct is likely to continue and cause additional harm and injuries if it persists

194. The public interest, most notably the interests of the students and staff of Lighthouse and their parents, would be served by the entry of an injunction prohibiting Midway's unlawful conduct.

195. Based upon the facts alleged herein and to be established at trial, Lighthouse has the clear legal right to the entry of an injunction prohibiting Midway from violating Lighthouse's rights, privileges, and liberties.

196. Midway's actions were unjustified, willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lighthouse. Accordingly, Defendant's actions are not privileged and they entitle Lighthouse to recover punitive damages.

**WHEREFORE,** Plaintiff, Lighthouse, demands judgment against Defendant, Midway, awarding:

A.    Compensatory damages in appropriate amounts to be established at trial;

B.    Special damages in appropriate amounts to be established at trial;

C.    Punitive Damages in appropriate amounts to be established at trial;

D.    A declaration that Defendant's acts violate 42 U.S.C. §1983;

E.    Injunctive relief prohibiting Defendant from violating 42 U.S.C. §1983;

F.    Reasonable attorneys' fees and costs associated with this action; and

G.    Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## COUNT VII
### [Defamation--Kanzigg]

198.    Plaintiff realleges paragraphs 1 through 100, as if fully set forth herein

199.    As alleged in paragraphs 43-45, 49, 51-55, 60-62, 65-, and 75, above, Kanzigg published, caused to be published, and/or directed or encouraged others to publish false and defamatory statements which did expose and had the tendency to expose Lighthouse to hatred, contempt, ridicule and disgrace.

200.    Defendants' false and defamatory statements are of and concerning Lighthouse and reasonably understood to be about Lighthouse.

201.    Kanzigg's defamatory statements about Lighthouse are false.

77

202. Kanzigg published, caused to be published, and/or directed or encouraged others to publish the defamatory statements negligently or, alternatively, knowing that they were false or with reckless disregard for their truth or falsity.

203. Kanzigg's false and defamatory statements are defamatory *per se* because they stated that Lighthouse committed crimes against children and other misconduct that tended to injure Lighthouse in its trade, business or profession.

204. In light of Lighthouse's standing in the community, the nature of the statements, the extent to which the statements were circulated, and the tendency of the statements to injure someone such as Lighthouse, Kanzigg directly and proximately caused Lighthouse to suffer significant damages, including substantial reputational harm which is ongoing in nature and will be suffered in the future.  Lighthouse is also entitled to recover damages for the costs associated with repairing its reputation and/or correcting the defamatory statements.

205. Re-publication of the  defamatory statements in other publications, online, and through social media also caused Lighthouse to suffer additional damages; all of which were foreseeable.

206. Kanzigg acted knowingly, intentionally, willfully, wantonly and maliciously, with the intent to harm Lighthouse, or in blatant disregard of the substantial likelihood of causing Lighthouse harm.

207. As a direct and proximate result of Kanzigg's tortious conduct, Lighthouse is entitled to compensatory and special damages in amounts to be proven at trial.

208.  As a direct and proximate result of the Kanzigg's tortious conduct, and in addition to the quantifiable monetary damages Lighthouse suffered, Lighthouse has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

209.  Based upon the facts alleged herein, Lighthouse has the clear legal right to the entry of an injunction prohibiting Defendant from publishing and republishing the defamatory statements.

210.  The public interest would be served by the entry of an injunction prohibiting republication of the defamatory statements.

211.  Based upon the facts alleged herein and to be established at trial, Lighthouse has the clear legal right to the entry of a permanent injunction prohibiting Defendant from publishing and republishing the defamatory statements.

212.  Kanzigg's actions were willful, intentional, malicious, and conducted in bad faith and with the intent to harm Lighthouse.  Accordingly, his actions were not privileged and they entitle Lighthouse to recover punitive damages.

**WHEREFORE,** Plaintiff, Lighthouse, demands judgment against Defendant, Kanzigg, awarding:

A.  Compensatory and special damages in appropriate amounts to be established at trial;

B.  Punitive Damages;

C.  Injunctive relief prohibiting Defendant from publishing and republishing the defamatory statements; and

D.   Such other and further relief as the Court deems just and appropriate to protect Plaintiff's rights and interests.

## COUNT VIII
### [Tortious Interference]

213.   Plaintiff realleges paragraphs 1 through 100, as if fully set forth herein

214.   Lighthouse had advantageous contractual and business relationships with its accreditation partners, dual enrollment partners, domestic students, and Brazilian exchange students, of which Defendants were aware at all times material.

215.   As alleged in paragraphs 25-82, above, Defendants intentionally and unjustifiably interfered with Lighthouse's advantageous contractual and business relationships, as a direct and proximate result of which Lighthouse suffered substantial damages as more specifically set forth in paragraphs 90-97, above.

216.   Defendants' actions alleged herein were unjustified, unlawful and committed maliciously and deliberately with an intent to injure Lighthouse and to cause it substantial harm, as well as with actual knowledge of the wrongfulness of the conduct and the high probability that injury and damage would result; and despite that knowledge, Defendants intentionally pursued such course of conduct, resulting in injury and damages to Lighthouse.

**WHEREFORE,** Plaintiff, Lighthouse, demands judgment against Defendants, Kanzigg and Midway, awarding:

A.   Compensatory damages in appropriate amounts to be established at trial;

B.   Punitive Damages;

C. Such other and further relief as the Court deems just and appropriate to protect plaintiff's rights and interests.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 25, 2026.

/s/ Shane B. Vogt
Shane B. Vogt - FBN 257620
LEAD COUNSEL
E-mail: shane@svogtlaw.com
VOGT LAW
625 E. Twiggs St.
Suite 1090
Tampa, Florida 33602
Tel: (813) 737-0717

Attorney for Plaintiff